## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.A. SWEEN COMPANY, INC., : | |
| : | Civ. No. 2:13-6337 (KM) (MCA) |
| **Plaintiff,** : | |
| : | |
| **v.** : | **MEMORANDUM OPINION** |
| : | |
| DELI EXPRESS OF TENAFLY, : | |
| LLC. : | |
| : | |
| **Defendant.** : | |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff, E.A. Sween Company, Inc. ("E.A. Sween"), asserts five causes of action related to infringement of its trademarks. This matter comes before the Court on E.A. Sween's unopposed Motion for Default Judgment (Docket No. 11) against Defendant, Deli Express of Tenafly, LLC ("Defendant" or "Tenafly"), pursuant to Fed. R. Civ. P. 55(b)(2). The summons and complaint were duly served, no answer or motion was filed in response, and the clerk entered default on December 5, 2013.

E.A. Sween brings this action against Defendant for Trademark Infringement and Unfair Competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New Jersey statutory and common law. Docket No. 1 ("Compl."). For the reasons set forth below, I find that entry of a default judgment is appropriate. I will grant E.A. Sween's request for an injunction against further infringement of its trademark and will grant its request for fees and costs, subject to further proofs.

### I. BACKGROUND

E.A. Sween is a Minnesota corporation that markets and sells convenience food products, such as sandwiches, bakery products, burritos, breakfast foods, and coffee, under its DELI EXPRESS trademark. The products are available through a wide variety of retail outlets, including convenience stores, delicatessens, drug stores, gas stations, truck stops, and vending machines. Compl. ¶ 10. E.A. Sween owns numerous registered United States trademarks and service marks that include the term "DELI EXPRESS." *Id.* ¶ 11; Compl., Exh. B (Cease and Desist Letter to Defendant enclosing proof of 19

1

federal registrations). Additionally, Sween owns three New Jersey state registrations for DELI EXPRESS in connection with food-related products and services. *Id.* ¶ 12; Compl. Exhibit C (State Renewal Certificates). E.A. Sween also owns many DELI EXPRESS internet domain names. *Id.* ¶ 14. Defendant has operated a restaurant business under the name DELI EXPRESS OF TENAFLY in Tenafly, New Jersey. *Id.* ¶¶ 2, 5.

Before filing suit, E.A. Sween informed the Defendant of its brand registrations and its objection to the continued use of DELI EXPRESS OF TENAFLY or any marks confusingly similar to the DELI EXPRESS mark. *Id.* ¶ 17. As of June 13, 2013, Defendant continued to use the DELI EXPRESS mark on the exterior of its store and on its take-out and delivery menus. *Id.* ¶ 18; Compl. E.A. Sween's counsel continued to contact Defendant from May 14, 2012 to the filing of this action in an attempt to resolve the dispute. *Id.* ¶ 19.

On July 11, 2012, E.A. Sween's counsel first received a communication from Oliver Carona-Vidal, Defendant's CEO and registered agent, and an unidentified female employee. Through these individuals, the Defendant informed E.A. Sween's counsel that the name of the restaurant and deli had been changed to "The Bagel Shop" six months earlier. *Id.* ¶ 20. From July 11, 2012, through early 2013, E.A. Sween requested photographs and other evidence from the Defendant in order to confirm that it was no longer using the DELI EXPRESS or DELI EXPRESS OF TENAFLY marks. Defendant did not comply with these requests. *Id.* ¶¶ 21–22. In June 2013, E.A. Sween confirmed that the Defendant continued to use the DELI EXPRESS mark on its exterior awning and on promotional items, and that it held itself out to the public as "Deli Express." *Id.* ¶ 22; Exhibit E (Photographs taken June 2013). Plaintiff's counsel spoke to Corona-Vidal on July 25, 2013. During the conversation, Corona-Vidal informed E.A. Sween's counsel that he did not plan to change the name of the business or amend the promotional materials. *Id.* ¶¶ 23–24.

On October 23, 2013, Plaintiff filed a five-count Complaint, alleging claims of Federal Trademark Infringement, pursuant to 15 U.S.C. Section 1114; Unfair Competition, pursuant to 15 U.S.C. Section 1125(a); Trademark Dilution, pursuant to 15 U.S.C. Section 1125(c); Trademark Dilution under New Jersey law, pursuant to N.J.S.A. 56:3-13:20; and Unfair Competition under New Jersey, pursuant to N.J.S.A. 56:4-1, 56:4-2, and the common law. Plaintiff requests the entry of judgment in its favor in the form of injunctive relief as well as attorneys' fees and costs. Docket No. 11 ("Pl. Br.") at 17–18.

E.A. Sween alleges that Defendant used the DELI EXPRESS mark without authorization in connection with the promotion and retail sale of sandwiches and other food products, in violation of Lanham Act §§ 32, 43 and New Jersey law. Plaintiff alleges that the DELI EXPRESS mark is well known, famous, and distinctive. Compl. ¶ 13. In 2001, DELI EXPRESS was voted "Vendor of the Year" and inducted into the Convenience Store Industry Hall of Fame. *Id.* The DELI EXPRESS brand has been co-branded with other food industry marks such as Jimmy Dean meats, Armour ham, Butterball turkey, and Hot Pockets pizza. *Id.*

On October 28, 2013, Plaintiff personally served Oliver Corona-Vidal, as registered agent for Defendant, with the Complaint and Summons. Docket No. 9. Pursuant to Fed. R. Civ. P. 12(a)(1), Defendant had twenty-one days, *i.e.,* until November 25, 2013, to answer or otherwise respond to the complaint. Defendant failed to do so, then or subsequently. On December 4, 2013, Plaintiff requested that the Clerk enter default pursuant to Fed. R. Civ. P. 55(a). On December 5, 2013, the Clerk entered default against the Defendant, Deli Express of Tenafly, LLC. On January 21, 2014, Plaintiff filed the pending Motion for Default Judgment. Docket No. 11.

## II. DISCUSSION

### A. Entry of Default Judgment

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher,* 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar.14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone,* CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded

factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, Defendant DELI EXPRESS OF TENAFLY was properly served and has failed to respond to the complaint. Defendant's time to respond to the Complaint has long since expired. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The factors weigh in favor of entry of a default judgment.

### 1. Whether Defendant has a Meritorious Defense

As to the first factor, I am disadvantaged, of course, by the lack of any submission by the Defendant, but I will review the record that is before me. *See Coach, Inc. v. Bags & Accessories*, CIV.A. 10-2555 JBS-J, 2011 WL 1882403, at *6 (D.N.J. May 17, 2011) ("Because the Defendants did not respond, the Court cannot determine whether the Defendants had meritorious defenses that are not reflected in the record."). I am satisfied that Plaintiff has stated claims for relief for Counts I, II, III, IV, and V. Accepting the factual allegations as true, as I must, it appears that Plaintiff has stated claims for trademark infringement under federal law; unfair competition under federal and state law; and dilution under federal and state law. My independent review of the record has not revealed any reason to believe that these claims are legally flawed or that there

is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at * 5;

> a. Trademark Infringement and Unfair Competition under the Lanham Act (Counts I and II)

Under the Lanham Act Section 32, 15 U.S.C. Section 1114(1):

(1) Any person who shall, without the consent of the registrant--

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

> Shall be liable in a civil action by the registrant . . . .

15 U.S.C.A. § 1114(1)(a). Furthermore, the Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, "false designation of origin" or "false description." 15 U.S.C.A. § 1125(a). The statute provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(A).

To state a claim for trademark infringement, 15 U.S.C. § 1114(1), and unfair competition, 15 U.S.C. § 1125(a)(1), under the Lanham Act, a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or

services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"). A plaintiff bears the burden of proving these elements. *Id.*

Here, E.A. Sween has provided evidence of the first and second elements. That evidence consists of trademark registrations establishing ownership of a valid and legally protectable mark. Compl. ¶¶ 30–72; Compl., Exhibit B (copies of 19 Federal Registration Certificates); Compl., Exhibit D (copies of three state renewal certificates). A "certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark" and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims. *Coach, Inc. v. Cosmetic House*, No. 10 Civ. 2794, 2011 WL 1211390, *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a)). E.A. Sween also alleges that it has continuously used the marks at issue and has used its various registration notices in association with the DELI EXPRESS marks on its goods, in connection with its service, and in its advertising. Compl. ¶¶ 30–72; *see* Compl., Exhibit A. I am satisfied that the first two elements are met here.

As to the third element, a "likelihood of confusion" exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Coach, Inc. v. Cosmetic House*, 2011 WL 1211390, at *3 (quoting *Ford Motor Co. v. Summit Motor Prods.*, Inc., 930 F.2d 277, 292 (3d Cir. 1991)). Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In this Circuit these factors include, but are not limited to

(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales

efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)). The Third Circuit has "repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision." *A & H Sportswear, Inc.*, 237 F.3d at 216. Reviewing those factors, I find that the Defendant's use of the allegedly infringing marks is likely to cause consumer confusion.

"The single most important factor in determining likelihood of confusion is mark similarity." *Id.* Plaintiff submits evidence that Defendant continues to use the DELI EXPRESS and DELI EXPRESS OF TENAFLY marks with the intent to confuse or deceive consumers. Compl. ¶ 76. Put most simply, confusion is likely because Defendant has used a mark almost identical to Plaintiff's valid and legally protectable mark. I cannot disagree. Marks are confusingly similar if "ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection, or sponsorship." *A & H Sportswear, Inc.*, 237 F.3d at 216 (quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994)). Where the goods or services are in direct competition, as is the case here, the degree of similarity required to prove likelihood of confusion is less than is required for dissimilar products. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) (citation omitted). Here, Defendant continues to use the term "DELI EXPRESS" and "DELI EXPRESS OF TENAFLY" on its store exterior and in its promotional materials to promote and sell its food products and services—products and services that are, of course, similar in nature to those provided by Plaintiff. I find that the marks are identical (with "OF TENAFLY" appended), and are therefore likely to cause confusion to an unsuspecting consumer.

Plaintiff also alleges that the marks are "well known, famous, and distinctive." Compl. ¶ 13. To evaluate this factor, a court must "examine: (1) the mark's distinctiveness or conceptual strength (the inherent features of the mark) and (2) its commercial strength (factual evidence of marketplace recognition)." *Freedom Card, Inc.*, 432 F.3d at 472 (citation omitted). "The conceptual strength of a mark is measured by classifying the mark in one of four categories ranging from the strongest to the weakest: "(1) arbitrary or

fanciful (such as "KODAK"); (2) suggestive (such as "COPPERTONE"); (3) descriptive (such as "SECURITY CENTER"); and (4) generic (such as "DIET CHOCOLATE FUDGE SODA")." *Id.* To determine commercial strength, courts examine the marketplace recognition of the trademark.

I find that DELI EXPRESS is conceptually and commercially strong. Though I do not find that the mark is fanciful, it is certainly not merely generic. It could be seen as suggestive, but at the very least, DELI EXPRESS is a descriptive mark. It describes "the intended purposed, function, or use of the goods; of the size of the goods, of the class of users of the goods, of a desirable characteristic of the goods, or of the end effect upon the user." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292, n.18 (3d Cir. 1991) (quoting 1 McCarthy, Trademarks and Unfair Competition at § 11:5).

While "generic marks do not receive trademark protection, arbitrary, suggestive and descriptive marks with a demonstrated secondary meaning are entitled to trademark protection." *Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 282-83 (3d Cir. 2001). However, "[i]f the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). "If the mark has not been federally registered or, if registered, has not achieved incontestability, then 'validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.'" *Id.* (quoting *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991) (footnotes omitted). A distinctive mark is one that is fanciful, arbitrary, or suggestive. *Id.* at n.5.

E.A. Sween's federally registered trademarks, Compl. ¶¶ 31–66, are registered on the Principal Register and are incontestable pursuant to 15 U.S.C. Sections 1065 and 1115(b).[1] Therefore, Plaintiff need not establish secondary meaning in order to be entitled to trademark protection.[2]

---

[1]    "A mark becomes incontestible after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years subsequent to registration, that there is no pending proceeding contesting the owner's rights to registration, and that there has been no adverse decision concerning the registrant's ownership or right to registration." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438, n.4 (3d Cir. 2000) (citing 15 U.S.C. §§ 1058, 1065; *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 n. 7 (3d Cir. 1994)).

[2]    In any event, I would find that DELI EXPRESS has a demonstrated secondary

Further, E.A. Sween offers proof of its marks' commercial strength. For example, in 2001, DELI EXPRES was voted "Vendor of the Year" and inducted into the "Convenience Store Industry Hall of Fame." *Id.* ¶ 13. Further, each week, more than one million DELI EXPRESS brand sandwiches are sold across the country. *Id.* ¶ 10. DELI EXPRESS products are available through a variety of retail outlets, including convenience stores, delicatessens, drug stores, gas stations, truck stops, and vending machines. *Id.* Accordingly, I am satisfied

---

meaning and that it is, therefore, entitled to trademark protection. A mark is descriptive with a secondary meaning when the mark "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted). "In general [a secondary meaning] is established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." *Id.* The Third Circuit has provided a "non-exclusive list of factors which may be considered," including: "the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).

As submitted by E.A. Sween, DELI EXPRESS sandwiches are among the top-selling brand of convenience food sandwiches in the United States and are sold nationwide. Compl. ¶ 10. Each week, more than 1 million sandwiches are sold across the country. *Id.* Plaintiff prominently displays the federally registered DELI EXPRESS trademark on its products, containers, and displays and its federally registered service marks in connection with the promotion and advertising of its services. *Id.* ¶ 29. E.A. Sween "has expended considerable time, effort, and sums of money in the development, preparation, promotional sale, and protection of its DELI EXPRESS branded food products and related services." *Id.* ¶ 74. According to InfoScan Reviews data, DELI EXPRESS produces seven of the 10 highest-selling sandwiches in convenience stores nationwide. Compl., Exhibit A. Further, DELI EXPRESS has been in business for at least 55 years. *Id.* The date of the first service mark provided to the Court is dated December 14, 1982, over thirty years ago. Though the words "deli" and "express" describe the sort of product sold by E.A. Sween—namely sandwiches and other food items to be consumed "on-the-go"—I find that consumers are likely to perceive the DELI EXPRESS mark "as a signifier of origin, rather than as a mere identification of the type of product." *Checkpoint Sys., Inc.*, 269 F.3d 270, 283, n.11 (3d Cir. 2001). This evidence tends to show secondary meaning.

that the DELI EXPRESS mark is both conceptually and commercially strong.

As to the third factor (purchasers' care and sophistication), I do not think that relevant consumers—presumably the general, hungry public—would exercise such heightened care as to undermine a finding of likely confusion. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186 (3d Cir. 2010) (reasoning that where "the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations," but "where the group of buyers is a combination of professionals and ordinary consumers, the class as a whole is not held to the higher standard of care") (internal quotations and citation omitted). At issue is the purchase of an ordinary, on-the-go breakfast, lunch or dinner. Accordingly, I will not apply a heightened standard of care to the buyer class.[3]

In regard to the fifth factor, E.A. Sween alleged that Defendant "continued to use the DELI EXPRESS mark and brand with the intent to confuse and to deceive consumers and to unjustly enrich Defendant at the expense of the public and Plaintiff." Compl. ¶ 76. There is evidence that Defendant used the marks on their promotional materials and on the exterior of the store, Compl., Exhibit E. *See A & H Sportswear, Inc.*, 237 F.3d at 225-26 (holding that "defendant's intent will indicate a likelihood of confusion only if an intent to confuse consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's"). To be sure, it would not be so unusual for a restaurant or delicatessen to have independently hit on the idea of using the words "deli" and "express" in naming or promoting its products and services. Nevertheless, I have evidence before me that Defendant continued

---

[3] The fourth and sixth factor, the length of time the defendant has used the mark without evidence of actual confusion arising and the evidence of actual confusion, may tend to weigh in favor of consumer confusion, but the Record before the Court is inconclusive. Though evidence of actual confusion is not required, such evidence is "highly probative of a likelihood of confusion." *Sabinsa Corp.*, 609 F.3d at 187.

Here, E.A. Sween alleges that it informed Defendant of its federal registrations and its objection to continued use of the DELI EXPRESS in May 2012 and that Defendant continued to use the marks at least as of the filing of this motion in January 2014. Compl. ¶¶ 17, 26. Because Defendant has not appeared in this case, Plaintiff has not had the opportunity to conduct discovery as to actual consumer confusion. Nevertheless, in light of the fact that Defendant has used Plaintiff's exact mark to promote and sell substantially the same sort of product sold by E.A. Sween for at least nineteen months and the absence of evidence that consumers were *not* confused, these factors are at worst neutral.

10

to use Plaintiff's marks after notification of E.A. Sween's trademark registrations. Moreover, Plaintiff submits that Defendant continued to use the DELI EXPRESS mark as it affirmatively misled Plaintiff into believing that it had changed its name to "The Bagel Shop." Compl. ¶¶ 20–22. Because Defendant has adopted a substantially identical mark and was offering products similar to those of E.A. Sween, it is plausible that Defendant's intent was to confuse customers in order to profit from the goodwill associated with the well-known DELI EXPRESS brand.

The seventh, eighth, and ninth factors address the "nature of the services provided, the customers targeted, and the methods used to reach those customers." *Primepoint, L.L.C. v. PrimePay, Inc.*, 545 F. Supp. 2d 426, 444 (D.N.J. 2008) (addressing these factors together). These tend to weigh in E.A. Sween's favor, but at worst, are neutral. The "greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." *Checkpoint Sys., Inc.*, 269 F.3d at 288–89. "When the parties target their sales efforts to the same group of consumers, there is a greater likelihood of confusion between two marks." *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 188 (3d Cir. 2010). The services and products offered by Plaintiff and Defendant are described very similarly. Moreover, it does not appear that the parties target their sales efforts to a different market segment, or that the parties use different methods of promotion to target these consumers. The parties operate in the same industry, though certainly on a different scale, and offer similar products at the retail level. It is therefore reasonable to believe that consumers would be confused by Defendant's use of the marks and would believe Defendant to be associated with E.A. Sween.

Upon review of the relevant factors, I find that the there is a likelihood that customers would be confused by the Defendant's use of the marks. I therefore find E.A. Sween's claims of trademark infringement and unfair competition under the Lanham Act to be legally sufficient.[4]

### b. Dilution under the Lanham Act

I will now address Plaintiff's claim for dilution, pursuant to 15 U.S.C. Section 1125(c) of the Lanham Act, Section 43. The statute provides that:

Subject to the principles of equity, the owner of a famous mark

---

[4]     As to the use in "commerce," see the following section. That discussion applies equally here.

that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). The statute defines a famous mark as a mark that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). Furthermore, Section 1125(c)(2)(B) defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."

"The federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion—the classical test for trademark infringement—if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000). The Third Circuit has provided that a plaintiff must prove the following elements to establish a prima facie claim under the federal dilution statute:

> 1. The plaintiff is the owner of a mark that qualifies as a "famous" mark in light of the totality of the eight factors listed in § 1125(c)(1),
>
> 2. The defendant is making commercial use in interstate commerce of a mark or trade name,
>
> 3. Defendant's use began after the plaintiff's mark became famous, and
>
> 4. Defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

*Id..*

As to the first element, the Third Circuit has considered the following factors when determining whether a mark is distinctive or famous:

> (A) the degree of inherent or acquired distinctiveness of the mark;

12

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

*Id.* (citing 15 U.S.C. § 1125(c)(1)(A)-(H)).

As I determined above in connection with the trademark claims, the DELI EXPRESS marks are distinctive and well known. Plaintiff has asserted that Plaintiff's DELI EXPRESS brand is recognized national, and that consumers widely recognize the brand's services and products. For example, Plaintiff alleges that the DELI EXPRESS mark is well known, famous, and distinctive. Compl. ¶ 13. In 2001, DELI EXPRESS was voted "Vendor of the Year" and inducted into the "Convenience Store Industry Hall of Fame." *Id.* The brand has been co-branded with other food industry marks such as Jimmy Dean meats, Armour ham, Butterball turkey, and Hot Pockets pizza. *Id.* Further, over 1 million DELI EXPRESS sandwiches are purchased by consumers every week. Compl. ¶ 10. Plaintiff's food products are available through a variety of retail outlets throughout the country, including convenience stores, delis, drug stores, gas stations, truck stops, resorts, and vending machines. *Id.* E.A. Sween protects its mark through trademark and service mark registration and owns numerous registered United States trademarks and service marks including the DELI EXPRESS mark Compl. ¶ 11. DELI EXPRESS marks have been in continuous use in commerce beginning, at the latest, on the date of the 1982 registration and continuing to the present. In light of the foregoing, I find that the DELI EXPRESS marks are famous marks under the statute.

The second element is use of the mark "in interstate commerce." *See Times Mirror Magazines, Inc.,* 212 F.3d at 163. Even in the case of a default judgment, there must be some showing, but the "quantum of commercial activity needed to demonstrate interstate commerce is not great," *Coach, Inc. v. Bags & Accessories,* 2011 WL 1882403, at *4. Congress intended to regulate to the Constitutional limit. *See* 15 U.S.C. § 1127 ("The word 'commerce' means all commerce which may lawfully be regulated by Congress"). Thus even intrastate activity that affects commerce may be reached. *See* McCarthy on Trademarks

§§ 25:53, 54 &  55. In particular, Congress may address practices that act "to the injury of interstate commerce *or to the hindrance or defeat of congressional policy regarding it.*" *Id.* § 23:55 (emphasis in original; quoting *Mandeville Island Farms v. American Crystal Sugar Co.*, 334 U.S. 219 (1948)). So, for example, the Second Circuit reversed the dismissal of an action involving local infringing sales at a Carvel ice cream franchise store, because "the sale of unauthorized products at individual Carvel stores has a potentially adverse effect on the entire Carvel chain." *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664 (2d Cir. 1968).  In short, even an intra-state infringement may be reached under the Lanham Act if it has "a substantial effect, economic or otherwise, upon plaintiff's interstate use of the mark." *Id.* § 25:56. Here, Plaintiff has made a substantial showing that its mark, and the good will associated with the mark, are an essential element of its nationwide sales. The mark is nationally famous, and federally registered. An erosion of that mark, even if local in nature, will thus affect interstate commerce.

I also am satisfied that the third and fourth elements of Plaintiff's prima facie case for federal dilution are met. Defendant began using the Plaintiff's mark after it became famous. Compl. ¶ 94. As the record reflects, Defendant did not begin using the mark until May 2012, while the DELI EXPRESS marks have been trademarked beginning in 1982. Likewise, I find that there is sufficient evidence to conclude that Defendant's use of the DELI EXPRESS mark "causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Times Mirror Magazines, Inc.*, 212 F.3d at 163; Compl. ¶ 95. This may be inferred from the fact that Defendant has used E.A. Sween's exact marks to promote and sell the same sort of food products promoted and sold under the DELI EXPRESS marks.

c. Dilution and Unfair Competition under New Jersey law

E.A. Sween also moves for the entry of default judgment on its state law claims for trademark dilution and unfair completion.

N.J.S.A. 56:3-13:20, which governs dilution under New Jersey law, provides that: "The owner of a mark which is famous in this State shall be entitled, subject to the principles of equity, to an injunction, commencing after the owner's mark becomes famous, against another person's use of the mark which causes dilution of the distinctive quality of the owner's mark, and to

14

obtain other relief provided in this section." N.J.S.A. 56:3-13:20. When determining whether a mark is famous, courts consider factors such as publicity of the mark, the extent of the use of the mark, and the extent of recognition of the mark. *Id. See also Platypus Wear, Inc. v. Bad Boy Club, Inc.*, CUV, 08-02662NLHAMD, 2009 WL 2147843, at *3 (D.N.J. July 15, 2009).[5]

New Jersey's unfair competition statute, N.J.S.A. 56:4-1, provides that: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. 56:4-1. N.J.S.A. 56:4-2 provides that a person or business who violates N.J.S.A. 56:4-1 "shall be liable, at the suit of the maker of such branded or trade-marked products, or any other injured person, to an injunction against such practices, and shall be liable in such suit for all damages, directly or indirectly caused, to the maker by such practices, which damages may be trebled at the discretion of the court."

"Courts in this district have found liability under federal law to be sufficient to establish liability under state law." *Coach, Inc. v. Cosmetic House*, CIV. 10-2794 WHW, 2011 WL 1211390, at *5 (D.N.J. Mar. 29, 2011); *see also 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 294 (D.N.J. 2006) ("Dilution claims under New Jersey law are subject to the same considerations as federal dilution claims."); *N.V.E., Inc. v. Day*, No. 07 Civ. 4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994)) ("By virtue of . . . Lanham Act violations," the defendant "also established its common law and state law claims for unfair competition.").

Accordingly, as I have already found that E.A. Sween has sufficiently stated a claim for unfair competition and dilution under the Lanham Act, I also find that Plaintiff has sufficiently stated claims for unfair competition and dilution under New Jersey law.

### 2. Prejudice suffered by the party seeking default

Second, I am persuaded that Plaintiff would suffer prejudice if default judgment were denied. Defendant was properly served nearly seven months ago, yet failed to appear or defend itself in any manner. *See Teamsters Pension*

---

[5] Unlike the Lanham Act, a New Jersey statutory dilution claim does not require any threshold showing as to interstate commerce.

15

*Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). Given Defendant's continued infringement and refusal to offer and explanation or justification, I find that Plaintiff would suffer ongoing harm and prejudice if a default judgment were denied. Plaintiff has been prejudiced by Defendant's failure to answer because it has incurred additional costs and attorneys' fees associated with protecting its rights and because Defendant's failure to appear has impeded E.A. Sween's ability to proceed in this action, including its ability to gain access to relevant discovery. It would be inequitable to allow Defendant to preclude Plaintiff's requested relief by simply failing to appear.

### 3. Culpability of the party subject to default

Third, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default. There is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment). Defendant was served with the complaint back on October 28, 2013. Docket No 9. Defendant has not responded in any manner. The obvious conclusion is that they are culpable for this failure and unable to offer a plausible defense.

Accordingly, I find that the entry of a default judgment is appropriate as to Counts I, II, III, IV, and V.

### B. Remedies

#### i. Injunctive Relief

E.A. Sween requests that the Court enter a permanent injunction against Defendant enjoining it from any further infringement and dilution of the DELI EXPRESS marks as well as enjoining it from further unfair competition.

The Supreme Court requires, in general, that any plaintiff seeking a permanent injunction show

16

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006) (citations omitted). The Court may issue a permanent injunction in the context of a default judgment where these requirements are met. *See Coach, Inc. v. Ocean Point Gifts*, CIV.A.09-4215 JBS, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). The Lanham Act in particular contains a specific statutory authorization for permanent injunctive relief to prevent or restrain trademark infringement. 15 U.S.C. § 1116(a).[6] I find that a permanent injunction is warranted here.

First, I find that Plaintiff would suffer irreparable injury if Defendant were to continue use of the DELI EXPRESS marks. According to E.A. Sween, Defendant continues to infringe Plaintiff's marks by using them on the exterior of the store and in its promotional materials, all in connection with the sale of Defendant's goods and services, which are similar to the goods and services sold by Plaintiff under its registered marks. This Circuit has recognized that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc.*, 369 F.3d at 726 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys.*, Inc., 143 F.3d 800, 805 (3d Cir. 1998)). Further, "trademark infringement amounts to irreparable injury as a matter of law." *Id.* (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992)).

I also find that an injunction is appropriate here because monetary damages are inadequate to compensate E.A. Sween for trademark infringement, unfair competition, and dilution, particularly where they are ongoing. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (reasoning, in the context of a preliminary injunction, that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will"). Defendant's continued infringing activity threatens E.A. Sween's reputation and goodwill. The remedy of injunctive relief will protect E.A. Sween against the threat of future infringement, a threat that

---

[6]     N.J.S.A. § 56:4-2, governing the state unfair competition claim, and N.J.S.A. 56:30-12:20, governing the state dilution claim, also entitle a plaintiff to injunctive relief. Under N.J.S.A. 56:30-12:20, a plaintiff is entitled to injunctive relief where willful intent is shown.

cannot be averted by compensatory relief alone. *See Coach, Inc. v. Bags & Accessories*, CIV.A. 10-2555 JBS-J, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (citation omitted) (concluding that while "a remedy at law would provide a degree of monetary relief," it would "not compensate for the injury" to plaintiff's "reputation or necessarily prevent future trademark infringement").

In balancing the hardships, I find that equity indeed warrants the relief Plaintiff seeks. Defendant will not be unduly burdened by an injunction. The only "hardship" imposed upon Defendant is that it refrain from engaging in unlawful conduct. *Id.* Moreover, Defendant has continued its infringing behavior even upon notification of Plaintiff's protected marks. Finally, I find that the public interest would not be disserved by issuing an injunction. To the contrary, the public can only benefit from the cessation of infringement. There is certainly a public interest in a truthful and accurate marketplace, while there is no public interest served by consumer confusion. *See Kos Pharm., Inc.*, 369 F.3d at 730.

Accordingly, I will grant Plaintiff the following injunctive relief:

Defendant, its partners, officers, agents, servants, representatives, employees, shareholders, successors, and all other persons in active concert or participation with Defendant, are hereby permanently enjoined and restrained from the following:

a. Doing business under the name "DELI EXPRESS;"

b. Filing for any future corporate names that include the phrase "Deli Express" or confusingly similar variations thereof. Within thirty (30) days of the date of the order of the Court, the Defendant must take any and all actions necessary to cancel the registration or amend and remove the phrase "Deli Express" from its current registration for the name Deli Express of Tenafly, LLC, (Entity Number 0600309419);

c. Using, in any manner, the term "DELI EXPRESS" and/or any confusingly similar designation alone or in combination with other words or designs as a trademark, trade name component, or otherwise, to market, advertise, or identify any product and/or service not produced, offered, or authorized by E.A. Sween Company;

d. Using, in any manner, the "DELI EXPRESS" trademarks or any mark confusingly similar to the DELI EXPRESS® Marks in

connection with Deli Express of Tenafly, LLC's goods or services in such a manner that is likely to create the erroneous belief that the goods or services are authorized by, sponsored by, licensed by, or are in any manner associated with E.A. Sween Company;

e. Otherwise infringing upon the DELI EXPRESS® Marks;

f. Unfairly competing with E.A. Sween Company in any manner whatsoever;

g. Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of the DELI EXPRESS® Marks;

h. Committing any other act or making any other statement that infringes E.A. Sween Company's trademarks and service marks, or constitutes an active trademark or service mark infringement, trademark dilution, unfair competition under federal common law or the common law of the State of New Jersey; and

i. Conducting business with, including, but not limited to, selling any sandwiches or other food products to any person, firm, or entity that Deli Express of Tenafly, LLC knows or has reason to believe is engaged in any of the following:

> (1) Doing business under the name "DELI EXPRESS";
>
> (2) Using, in any manner, the term "DELI EXPRESS" and/or any confusingly similar designation alone or in combination with other words or designs as a trademark, trade name component, or otherwise, market, advertise, or identify any product and/or service not produced, offered or authorized by E.A. Sween Company; and
>
> (3) Using, in any manner, the DELI EXPRESS® Marks in connection with any such person's, firm's, or entities' goods or services in such a manner that is likely to create the erroneous belief that the goods or services are authorized by, sponsored by, licensed by, or are in any manner associated with E.A. Sween Company.

### ii. Attorneys' Fees and Costs

"Reasonable attorney's fees may be awarded in exceptional cases; exceptional cases include those where the Court has made a finding of

willfulness." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008) (citations omitted); *see* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"). The Third Circuit has indeed held that "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'" *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991) (citing 15 U.S.C. § 1117(a)).

As discussed above, Defendant's conduct constitutes willful infringement. Defendant continued to use the DELI EXPRESS and DELI EXPRESS OF TENAFLY marks long after Plaintiff notified Defendant of its federal and state registrations and of Plaintiff's objections to continued use of the marks. Moreover, Defendant knowingly misrepresented to Plaintiff that it had ceased improper use of the marks, when in fact, Defendant has continued its unauthorized use of the marks. These circumstances are sufficiently exceptional. Accordingly, I will award reasonable attorney's fees. I will also award E.A. Sween costs. *See* 15 U.S.C. § 1117(a) (allowing for the award of costs); *see also* Fed R. Civ. P. 54; *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC*, CIV.A. 07-4802 (WHW), 2008 WL 4601771, at *5 (D.N.J. Oct. 15, 2008) ("Pursuant to Federal Rule of Civil Procedure 54(d)(1), costs other than attorney's fees should be allowed to the prevailing party on a motion for default judgment.").

Plaintiff has not yet submitted proofs of attorneys' fees and costs. The amount of fees and costs will be determined upon an application and accompanying affidavit of counsel pursuant to Local Rule 54.1, Fed R. Civ. P. 55.

## III. CONCLUSION

For the foregoing reasons, default judgment will be entered in favor of Plaintiff, E.A. Sween Company, Inc., including the granting of attorneys' fees and costs, plus injunctive relief. Judgment will be filed separately after the determination of the amount of attorneys' fees.

DATED: May 13, 2014

**KEVIN MCNULTY**
**United States District Judge**

20